## UNITED STATES DISTRICT COURT
### For the
### Southern District of Illinois

MICHAEL FLOURNOY

        Plaintiff,

                                         **Case No. 22-cv-00010-JPG**

vs.

D. SPROUL, C. DAVIS, J. LECLAIR,
J. BROOKS, S. HENDRICKSEN,
K. MITCHELL, M. DAUN, MR. LANCE          **CIVIL RIGHTS COMPLAINT**
S. HOLMES, HUCKELBERRY, M. SCHNEDER,    **pursuant to 28 U.S.C. §1331 (Federal Prisoner)**
J. JARRETT, J. POLLEY, D. LENON,
AW SOSA, B. MEIGS,
BRANDON HARRIS, BYRAM, A. MOULTON,
J. HUGES, MS. WEBB and K. SMILEY,

        Defendants.

### Plaintiff's Amended Complaint

Now comes Plaintiff upon the Court's Order to amend His 2nd complaint and attach all relevant documents in support thereof.

1. Plaintiff has done His best to comply with the Court's request and form, and seeks a liberal construing of His submission.

2. Plaintiff did not receive all of His legal work, copies, emails, and notes from Marion FCI, and has filed a separate tort action for personal property that was taken from His property.

3. The missing emails, notes, and legal work are obtainable from Marion's records, and will be requested by Order of Court provided this order is sufficient for screening.

4. Plaintiff will also be receiving assistance of counsel to assist with the proper filing/litigation in this cause.

Wherefore, Plaintiff respectfully submits this amended complaint in good faith.

Respectfully submitted.

*Mr. Flournoy, Michael*    7-4-22
Mr. Flournoy, Michael
Pathway Forward, Resident Reentry Center
825 N Christiana Ave, Room 425
Chicago, IL 60651

## UNITED STATES DISTRICT COURT
### For the
### Southern District of Illinois

MICHAEL FLOURNOY,

        Plaintiff,

vs.

        Case No. 22-cv-00010-JPG

D. SPROUL, C. DAVIS, J. LECLAIR,
J. BROOKS, S. HENDRICKSEN,
K. MITCHELL, M. DAUN, MR. LANCE
S. HOLMES, HUCKELBERRY, M. SCHNEDER,
J. JARRETT, J. POLLEY, D. LENON,
AW SOSA, B. MEIGS,
BRANDON HARRIS, BYRAM, A. MOULTON,
J. HUGES, MS. WEBB and K. SMILEY,

        CIVIL RIGHTS COMPLAINT
        pursuant to 28 U.S.C. §1331 (Federal Prisoner)

        Defendants.

## I.    JURISDICTION

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of confinement.

    Pathway Forward, Resident Reentry Center
    825 N Christiana Ave, Room 425
    Chicago, IL 60651
    #44862-424

**Defendant #1:**

B.    Defendant Daniel Sproul is employed as a Correctional Officer with the Bureau of Prisons.

    At the time the claim(s) alleged in this complaint arose, was Defendant #1 employed by the state, local, or federal government? YES.

    If your answer is YES, briefly explain:

    Defendant Sproul is subject to its oath of office, who at all times mentioned in this complaint held rank as Warden/CEO. He is legally responsible for the operation of Marion FCI and camp, including but not limited to: the welfare of all inmates and staff;

1

ensuring effective informal resolution procedures are in place; ensuring good faith attempts of grievance procedures don't operate to limit inmate access to formal filing of grievances; acknowledge receipt of grievance request or appeals by returning receipt to inmate; ensuring due process of SHU custody, review, and processing; and ensuring all inmates receive fair access and treatment through medical/health services.

**Defendant #2:**

C.      Defendant AW. J. LeClair is employed as a Correctional Officer with the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant LeClair is subject to its oath of office, who at all times mentioned in this complaint held rank as Assistant Warden of Programs and/or Operations, as directed by warden. His rank is established by the warden over the "Programs Dept." and/or "Operations Dept.", and is legally responsible as supervisor of Marion FCI's administrative programs and/or security operations, as directed by warden, including its camp.

**Defendant #3:**

D.      Defendant AW. Sosa is employed as a Correctional Officer with the Bureau o Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #3 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Sosa is subject to its oath of office, who at all times mentioned in this complaint held rank as Assistant Warden of programs and/or operations, as directed by warden. Her rank is established by the warden over the "Programs Dept." and/or" Operations Dept.", and is legally responsible as a supervisor of Marion FCI's administrative programs and/or security operations, as directed by warden, including its camp.

**Defendant #4:**

E.      Defendant Captain C. Davis is employed as a Correctional Officer with the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #4 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

2

Defendant Davis is subject to its oath of office, who at all times mentioned in this complaint held rank as Captain. He is legally responsible for the operation/security of Marion FCI, and for the camp, ensuring due process of SHU placement/review; effective processing and investigations of staff misconduct; fair treatment of inmates and enforcement of the oath of office.

**Defendant #5:**

F.     Defendant M. Daun is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #5 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Daun is subject to its oath of office, who at all times mentioned in this complaint, held an unknown rank relating to R&D office/unit team officers of Marion FCI. Daun's supervisor responsibilities are unknown to Plaintiff at this time but will become known throughout discovery.

**Defendant #6:**

G.     Defendant Byram is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #6 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Byram is subject to its oath of office, who at all times mentioned in this complaint held rank as Acting Unit Manager/CMC. She is legally responsible as the administrative head of the general unit team(s) of Marion FCI; overseeing all unit programs/activities; chairperson of the team which comprises of unit manager(s), case manager(s) and counselor(s); responsible for review of team decisions prior to submission to warden; and compliance with Federal law/BOP policy.

**Defendant #7:**

H.     Defendant J. Polly is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #7 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Polly is subject to its oath of office, who at all times mentioned in this complaint held rank as a Case Manager. He is responsible for all case work services; prepares classification material, progress reports, release plans, correspondence and

3

other materials relating to inmate commitment; serves as liaison between inmate, administration, community and may chair Unit Discipline Committee (UDC); ordinarily present during initial classification and subsequent reviews.

**Defendant #8:**

I.    Defendant J. Jarrett is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #8 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Jarrett is subject to its oath of office, who at all times mentioned in this complaint held rank as Correctional Counselor. He is responsible for providing counseling and guidance for inmates of the camp in areas of institutional adjustment, personal difficulties and plans for the future; plays leading role in segments of unit programs relating to inmate activities, job placement, bed placement and visiting approval; may conduct counseling groups in unit and/or groups open to general population; providing "appropriate form(s)" for grievance to inmate(s); logging grievance in at time inmate gives grievance to him.

**Defendant #9:**

J.    Defendant Lts. J. Brooks is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #9 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Brooks is subject to its oath of office, who at all times mentioned in the complaint held rank as Lieutenant. He is responsible for various aspects of institutional security assigned to him by Captain.

**Defendant #10:**

K.    Defendant S. Hendricksen is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #10 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Hendricksen is subject to its oath of office, who at all times mentioned in this complaint held rank as SHU Lieutenant. He is responsible for all aspects of SHU housing, placement, review, policy/due process, as well as any other duties directed by Captain.

**Defendant #11:**

L.      Defendant K. Mitchell is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #11 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Mitchell is subject to its oath of office, who at all times mentioned in this complaint held rank as SIA/SIS Lieutenant. She is responsible for various aspects of investigation(s) of inmate(s) and/or staff misconduct; and is the supervisor for all SIA/SIS Correctional Officers. Mitchell handles various other aspects of administrative action(s) and/or institutional security assigned to her by Warden/Captain.

**Defendant #12:**

M.      Defendant M. Schneder is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #12 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Schneder is subject to its oath of office, who at all times mentioned in this complaint, held rank as a Correctional Officer of the SIS Office. He has responsibilities/duties of, but not limited to: daily supervision of inmates, enforcement of rules, regulations, safety, security, and investigation(s) into violations of BOP rules; in regular contact with inmates and encouraged to establish professional relations that don't interfere with his primary duties and conducts regular searches for contraband.

**Defendant #13:**

N.      Defendant Huckelberry is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #13 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Huckelberry is subject to its oath of office, who at all times mentioned in this complaint, held rank as a Correctional Officer of the SIS Office. He has responsibilities/duties of, but not limited to: daily supervision of inmates, enforcement of rules, regulations, safety, security, and investigation(s) into violations of BOP rules; in regular contact with inmates and encouraged to establish professional relationships that don't interfere with his primary duties, and conducts regular searches for contraband.

5

**Defendant #14:**

O.      Defendant D. Lenon is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #14 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Lenon is subject to its oath of office, who at all times mentioned in this complaint, held rank as SHU property officer. In addition to basic duties as C/O, he is responsible for making sure inmates who enter SHU receive personal property transferred from general population based on their SHU status (administrative/segregation), and for the custody of inmates' property while they are in SHU – including but not limited to the safe keeping thereof.

**Defendant #15:**

P.      Defendant B. Meigs is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #15 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Meigs is subject to its oath of office, who at all times mentioned in this complaint, held rank as Correctional Officer. He has direct responsibility for daily supervision of inmates; enforcement of rules, regulations, safety, security, and sanitation responsibilities in the unit; in regular contact with inmates and encouraged to establish professional relationships that don't interfere with his primary duties; control movement in and out of unit and conduct regular searches for contraband.

**Defendant #16:**

Q.      Defendant Brandon Harris is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #16 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Harris is subject to its oath of office, who at all times mentioned in this complaint, held rank as Correctional Officer. He has direct responsibility for daily supervision of inmates; enforcement of rules, regulations, safety, security, and sanitation responsibilities in unit; in regular contact with inmates and encouraged to establish professional relationships that don't interfere with his primary duties; controls movement in and out of unit and conduct regular searches for contraband.

6

**Defendant #17:**

R.      Defendant Ms. Webb is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #17 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Webb is subject to its oath of office, who at all times mentioned in this complaint, held rank as Correctional Officer. He has direct responsibility for daily supervision of inmates; enforcement of rule, regular contact with inmates and encouraged to establish professional relationships that don't interfere with his primary duties; controls movement in and out of unit and conduct regular searches for contraband.

**Defendant #18:**

S.      Defendant K. Smiley is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #18 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Smiley is subject to its oath of office, who at all times mentioned in this complaint, held rank as Correctional Officer. He has direct responsibility for daily supervision of inmates; enforcement of rules, in regular contact with inmates and encouraged to establish professional relationships that don't interfere with his primary duties; controls movement in and out of unit and conduct regular searches for contraband.

**Defendant #19:**

T.      Defendant Mr. Lance is employed as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #19 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Lance is subject to its oath office, who at all times mentioned in this complaint, held rand as Food Service Supervisor. In addition to regular duties as C/O, he supervises inmates who work in kitchen detail; ensure that BOP nationwide menu is followed, and inmates who receive special diets are fed daily.

7

**Defendant #20:**

U.      Defendant S. Holmes is employed, to Plaintiff's knowledge, as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #20 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Holmes is subject to its oath of office, who at all times mentioned in this complaint, held rank as Institution Chaplain. He is responsible for various religious services for all faiths; not limed to, special orders, approvals, submissions, and outside contractor services. The chaplain may also have other duties/responsibilities that are unknow to Plaintiff at this time.

**Defendant #21:**

V.      Defendant A. Moulton is employed, to Plaintiff's knowledge, as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #21 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Moulton is subject to its oath of office, who at all times mentioned in this complaint, held rank as Medical Staff, with unknown duties.

**Defendant #22:**

W.      Defendant J. Huges is employed, to Plaintiff's knowledge, as a Correctional Officer of the Bureau of Prisons.

At the time the claim(s) alleged in this complaint arose, was Defendant #22 employed by the state, local, or federal government? YES.

If your answer is YES, briefly explain:

Defendant Huges is subject to its oath of office, who at all times mentioned in this complaint, held rank as Medical Staff, with unknown duties.

II.    **PREVIOUS LAWSUITS**

A.      Have you begun any lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. §1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law? YES

8

B.      If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)). FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

(a)     1.      Parties to previous lawsuits:
                Plaintiff(s): Michael Flournoy

                Defendant(s):  Winnebago County Sheriff Office, Robert Bob Baudelio Juanez, Larry Marino, Daniel Freedlund, Peter Dalpra, Joseph Boomer, Brad Kiser, Iasparro Dominic, Dunnigham Nick, Julie Dodd, Neal C. Gruhn

        2.      Court (if federal court, name of the district; if state court, name of the county): Western District of Wisconsin

        3.      Docket number: 14cv00528

        4.      Name of Judge to whom case was assigned: James D. Peterson

        5.      Type of case (for example: Was it a habeas corpus or civil rights action?): 42:1983 Prisoner Civil Rights

        6.      Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Case dismissed 03/10/2015; Appealed through U.S. Court of Appeals, 7th Circuit Case #15-1728; Appeal affirmed District Court's judgment on 12/9/2015

        7.      Approximate date of filing lawsuit: 07/28/2014

        8.      Approximate date of disposition: 03/10/2015

        9.      Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?" No.
                Case was dismissed in its entirety for failure to state a claim upon which relief can be granted.

(b)     1.      Parties to previous lawsuits:
                Plaintiff(s): Michael Flournoy

                Defendant(s): John G. McKenzie

9

2.  Court (if federal court, name of the district; if state court, name of the county): Western District of Wisconsin

3.  Docket number: 14cv00554

4.  Name of Judge to whom case was assigned: James D. Peterson

5.  Type of case (for example: Was it a habeas corpus or civil rights action?): 42:1983 Prisoner Civil Rights

6.  Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Case dismissed 01/26/2015; Appealed through U.S. Court of Appeals 7th Circuit Case #15-1338; Appeal dismissed 08/24/2015

7.  Approximate date of filing lawsuit: 08/11/2014

8.  Approximate date of disposition: 01/26/2015

9.  Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?" No.
Case was dismissed with prejudice for failure to state a claim upon which relief can be granted.

(c)  1.  Parties to previous lawsuits:
Plaintiff(s): Michael Flournoy

Defendant(s): Frank Himel, Other unknown parties

2.  Court (if federal court, name of the district; if state court, name of the county): Western District of Wisconsin

3.  Docket number: 15cv00066

4.  Name of Judge to whom case was assigned: James D. Peterson

5.  Type of case (for example: Was it a habeas corpus or civil rights action?): 28:1331 Federal question: breach of contract

6.  Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Case terminated 03/20/2015; No appeal filed.

7.  Approximate date of filing lawsuit: 01/30/2015

8.  Approximate date of disposition: 03/20/2015

10

9. Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?" No.
Case was terminated for Plaintiff's failure to pay initial partial filing fee.

(d) 1. Parties to previous lawsuits:
Plaintiff(s): Michael Flournoy

Defendant(s): Jonathan Hemingway, AW Fournelle, Cynthia Suydam, A. Vaughn, L. Huddleston, Lts. Lachman, Lts. Dickman, Ryan Lea, C. Ellison, Chambers, Unknown Regional Administrative Remedy Coordinator, Romero-Licita, Unknown C/O

2. Court (if federal court, name of the district; if state court, name of the county): Eastern District of Michigan

3. Docket number: 20cv13130

4. Name of Judge to whom case was assigned: Robert Cleland

5. Type of case (for example: Was it a habeas corpus or civil rights action?): 28:1331 Prisoner/Civil Rights

6. Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Case dismissed 05/18/21; Appealed through U.S. Court of Appeals 6th Circuit Case #21-2604; Appeal affirmed District Court's judgement 04/06/2022.

7. Approximate date of filing lawsuit: 11/25/2020

8. Approximate date of disposition: 05/18/2021

9. Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?" No.
Appeal dismissed with prejudice for failure to state a claim upon which relief can be granted.

III. **GRIEVANCE PROCEDURE**

A. Is there a prisoner grievance procedure in the institution? YES

B. Did you present the facts relating to your complaint in the prisoner grievance procedure? YES

C. If your answer is YES,
1. What steps did you take? Requested forms, made informal complaints, filed complaints to outside agencies

11

2. What was the result? Forms were denied during the 20-day allotted time. Complaints had relevant documentation removed from filings were withheld beyond allotted time to respond. Staff retaliated for attempting to make misconduct known outside of institution.

D.   If your answer is NO, explain why not. N/A

E.   If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?  N/A

F.   If your answer is YES,
   1. What steps did you take? N/A
   2. What was the result? N/A

G.   If your answer is NO, explain why not. N/A

H.   Attach copies of your request for an administrative/remedy and any response you received. If you cannot do so, explain why not: See attached.


IV.   **STATEMENT OF CLAIM**

State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

**First Amendment Free Exercise of Faith/Freedom of Religion**

1. Administrative Staff/Supervising Defendants; D. Sproul; C. Davis; J. LeClair; C. Brooks; S. Hendricksen; K. Mitchell; M. Daun; S. Holmes; Huckelberry; M. Schneder; J. Jarrett; AW Sosa,

On 12/15/21, in Marion FCI/Camp Administrative Staff/Supervising defendants took Plaintiff out of general population and placed Him in Marion's Special Housing unit to disparage His religious beliefs and coerce/harass Him to change His Religious Affiliations. Plaintiff requested the religious diet on 12/14/21 and was placed in SHU less than 24 hours after approval. Plaintiff was told by S. Holmes that he "couldn't find any (religious) reason to deny the diet, but for some reason 'they' don't want the diet at the camp". Plaintiff did not heed the idle threat and was denied the normal due process of SHU placement and review for not abandoning the right to freely practice His faith as a Muslim.

Plaintiff held the right to practice His faith without pressure to change His affiliation. All defendants were aware Plaintiff had not violated any rules to justify SHU placement and openly acknowledged no known reason He was in SHU.  Defendants knew Plaintiff was the only

12

practicing Muslim at the camp, and that His practice was within His right. There is no rule Muslims must eat halal diet in SHU if they are housed in Marion camp.

Defendants J. LeClair; C. Brooks; M. Daun; S. Holmes; K. Mitchell; J. Jarrett; J. Polley, and AW Sosa, were all administrative staff/supervisors who agreed to deprive Plaintiff of His right to not be taken from general population absent incident or due cause after He requested to be provided BOP's Religious Halal diet on 12/14/2021. Defendants violated Plaintiff's right to practice His faith in prison.

Defendants Huckelberry and M. Schneder ordered Plaintiff to report to SHU after thoroughly searching His cell and finding no contraband. Both knew there was no cause to do so. After reporting to building, it became clear that Defendants J. LeClair, M. Daun, and Ms. Byram was expecting Plaintiff based on conversations they had. Schneder told Byram that Plaintiff "was going to be someone she didn't have to do paperwork for". J. LeClair and M. Daun, each met/greeted Plaintiff at entrance of building and conversated with defendants who ordered Him to report.

Plaintiff stayed in SHU for 93 days after requesting religious diet. Plaintiffs established equity rights and First Amendment right to freely and openly practice His faith, as well as the right to not have His religious beliefs disparaged nor be coerced or harassed to change His religious affiliation were violated. Defendants were aware placing Plaintiff in SHU for requesting religious diet did not serve any penological purpose.

**Punishment without cause at SHU.**

On 12/19/21 Brooks refused to provide ADO. Plaintiff had a right to receive notice of SHU status.

On 12/21/21 Hendricksen refused to provide written notice of SHU status.

On 12/22/21 Byram falsely claimed she didn't know why Plaintiff was in SHU and couldn't "do anything until Warden signed off on report".

On 12/24/21 J. Polley refused to provide written notice or copy of reason for SHU placement stating "no electronic records, notes, or investigation exists for why you are here".

On 12/29/21 C. Davis/D. Sproul refused to provide notice of SHU placement or answer why Plaintiff was denied to have a 7-day review of SHU status where records, memoranda is presented in presence of inmate. Sproul's only answer was "I don't have time to talk to you about all the crap going on at the camp". Davis stated, "Oh you just got here" walking away laughing.

On 12/31/21 Polley refused copies of notice again, stating "no records or notes exist for why Plaintiff was in SHU, and accepted written request to be transferred without processing it.

On 12/31/21 K. Mitchell was emailed by Plaintiff requesting notice of SHU status. Mitchell never responded to the request and denied receiving the email from law library on 01/05/22 or any email from Polley.

13

On 1/2/22 Polley again refused to provide notice of SHU status/ADO alleging no electronic record existed for Plaintiff's SHU placement, stating he would "email SIS and see what they are going to do with you". Plaintiff complained of "getting the run around on all requests about medical, SHU status and receiving legal work". Polley refused to provide any official response.

On 1/3/22 Polley gave Plaintiff a copy of His Sentence Computation Sheet (nothing to do with SHU placement). Polley again agreed to submit transfer, but refused to provide any written information on SHU status.

On 1/4/22 Jarrett refused to give Plaintiff legal mail and claimed he never receive request inquiring about SHU status or Administrative Remedy forms.

On 1/5/22 Davis again refused to provide notice of SHU placement or tell Plaintiff why He was in SHU. Again falsely stating, "you're probably in here for bringing in contraband".

On 1/5/22 Byram falsely told Plaintiff He was "getting transferred without incident" as if the process was approved and refused to give anything in writing.

On 1/5/22 J. LeClair stated "you are going to be here for a while" and refused to give anything in writing or reason for being held in SHU.

On 1/5/22 K. Mitchell denied having knowledge of who Plaintiff was or why He was in SHU, falsely stating "we have 90 days to hold you", i.e., without reason. Mitchell also told Plaint she could not provide anything in writing.

On 1/10/22 Polley stated "you're being transferred to a higher security. I don't have anything bad to say about you in the 409. The SIS Report is not a part of the 409. You can't get a copy of any of these documents to appeal. You can do Administrative Remedy saying you don't want to be shipped." Plaintiff requested remedy form from Polley and was denied. Polley said he'd send "Jarrett with forms". Policy allows Plaintiff to receive forms from any unit team member of which Polley was.

On 1/11/22 Jarrett was asked if Plaintiff "could receive His legal work or inform Him how much it would cost to send it home?" Jarrett refused to answer any questions but gave Plaintiff (2) remedy forms stating, "see if that helps".

On 1/12/22 Hendricksen was asked about Plaintiff "receiving His property; written notice of SHU status to appeal; and why He was in a cell with a disciplinary segregation inmate". Hendricksen falsely stated "Its my right to do it. I don't have to give you any legal work or nothing – so I'm not doing it. File what you want". Plaintiff filed complaints against Jarrett and sent the Regional Director a Sensitive BP-9 complaining about Marion's unauthorized punishment/due process violations.

On 1/19/22, AW Sosa denied knowledge of who Plaintiff was or why He was in SHU. Byram was asked about Plaintiff's status by Sosa. Byram said "you're SIS and are begin shipped". Sosa was informed that Plaintiff "did not have an incident". In response to Plaintiff, Daun joined the group, stating "you can't have administrative remedy because theres nothing to appeal. It's an SIS Report. You can't appeal or know why you're getting shipped.

14

Byram again replied, "theres nothing to appeal, you can't appeal or know why you're getting shipped." Plaintiff asserted His statutory right to appeal any unit team decision. Daun again denied the forms stating, "you can't have Administrative Remedy form 'cause you can't appeal nothing. Theres nothing for you to see".

On 1/26/22 Polley came to retrieve Plaintiff's appeal against the sham UDC Hearing for the false incident. Polley stated he'd "make sure the appeal was filed and return receipt. He did neither. Plaintiff had a right to appeal UDC Hearing and receive relief.

Defendants were not authorized to make any institutional supplement of Special Housing Unit rules. Alternative segregations for Muslim inmates who request religious meals were not approved for Plaintiff.  Plaintiff's diet in no way met the bar required for restrictive conditions, nor did it pose a threat to life, property, staff, inmates, public, or security of Marion Camp.

Defendants could not have taken Plaintiff to SHU without Sproul, Davis, Hendricksen, and/or Brooks' prior approval. Plaintiff was never alleged to have a disciplinary violation and never requested protective custody. Plaintiff had a right to be notified of the reasons He was placed in SHU supported by objective evidence clearly articulated in the narrative section of the ADO. Placing Plaintiff in SHU without notice or cause violated His rights to equal protection under law, due process of SHU placement. Plaintiffs unfair treatment was based on His race and religion.

### Proselytism/Reprisals for Filing Complaints Against Federal Employee

B. Meigs; Brandon Harris; Ms. Webb; K.Smiley; J. Jarrett; S. Hendricksen; Polley; Lenon; A.Moulton, openly targeted Plaintiff after staff became aware He filed this civil action against administrative staff/supervisors, which violated His right not to be retaliated against or receive reprisals for complaining against government officials.

On 1/9/22 B. Meigs ordered Plaintiff to open His privileged mail to this Court and to M. Law Group so he could read it and make sure the Court and M. Law Group "wasn't being asked to sneak something into SHU". Meigs threatened Plaintiff "either let me read it or its not going out". Plaintiff complained that his order violated His privileged mail rights. Meigs stated "I'm doing what I was told. Do whatever you think you have to do".

On 1/22/22 Brandon Harris knowingly used a false statement on an official government document to give Plaintiff a minor incident report for failing to stand for count. Stating he gave Plaintiff (3) orders to stand – of which He refused.

On 1/22/22 Hendricksen gave Plaintiff a copy of incident report and refused to take notes/names of Plaintiff's witnesses. Plaintiff had a right to have witnesses/evidence recorded for His defense against allegations. Hendricksen had personal knowledge that SHU inmates were not asked to stand for count and knew that the incident reported false allegations. Hendricksen was Meigs/Harris' supervisor who upon information and belief authorized the knowingly false incident.

On 1/25/22 Jarrett/Polley did UDC for incident report knowing Plaintiff named them in this civil suit. Policy authorized other team members to do UDC in situations like this to avoid the appearance of bias/conflict. Jarrett/Polley refused to question Plaintiff's witnesses and refused

15

to provide Administrative Remedy forms to complain against them for denying same rights afforded non-Muslim inmates. Defendants predetermined the incident finding in retaliation for filing grievance.

On 1/25/22 Lenon allowed Plaintiff to pick out property to be sent home, then told Him "R & D will not send property home until He was released from SHU or transferred". Plaintiff nor family would not have access to property/legal work while He was in SHU. Plaintiff had a right to have His legal work and continue pending litigation while in SHU. Defendants violated this right.

On 1/25/22 Davis who was Captain/Supervisor of all Marion FCI/camp staff was made aware of Jarrett/Polley's denial of UDC rights, and the knowingly false statement used/authorized by Harris/Hendricksen. Davis had authority to investigate/discard incident and refused to do so.

On 2/2/22 and 2/9/22 Plaintiff requested separatee orders against Jarrett, Harris, and Hendrickson. This request is used by BOP as Order of Protection against named defendants. This request was given to R & D Supervisor Crawford and Education Supervisor Owens. Defendants never processed separatee(s) and did not stop retaliation by requested parties. Plaintiff had a right not to receive reprisals from defendants.

On 2/7/22, Harris refused to give Plaintiff His Religious diet and tried to force Him to eat a regular tray, i.e., renounce this tenet of faith. Harris told Plaintiff that "if He didn't eat it, He would not receive food and be marked as refusing a tray". Plaintiff refused to accept the tray and was denied the same right to eat as other non-Muslim inmates.

On 2/7/22 Plaintiff received FSA Credit of 365 days. Defendants M. Daun; Byram; Sproul; Davis; Polley: Jarrett; Sosa; and LeClair received orders from DOJ to process Plaintiff out of BOP into RRC, as the credit gave Him less than 12 months to His release date. In retaliation for this civil action and complaints to agencies outside of the institution, defendants transferred Plaintiff to another institution causing Him to miss more than 80 days of valuable reentry programming. Plaintiff had the same rights to benefit from FSA as other non-Muslim inmates, and was deprived of equal application of the law based on His complaints of misconduct against a Muslim.

On 2/25/22, Ms. Webb told Plaintiff she was not passing out mail on the range because "someone called her a b*#tch". On 2/26/22 Plaintiff asked Smiley about Friday's mail, relaying Ms. Webb's statement. Smiley stated "it was my idea that she do it. I said that's what I'd do". He stated he'd "check to see if it was any mail", then returned with a flat rate envelope for Plaintiff, marked "legal research material" from M. Law Group.

This envelope contained copies of complaints against Marion FCI to OIG, Director of Regional, and the 2/14/22 filed 2nd Amended Complaint to this Court. These documents were kept overnight and read by non-mail room officers. Plaintiff had a right to privacy after mailroom's screening of incoming mail.

On 3/4/22 A. Moulton used unprofessional tone to inform Plaintiff that He had privileged information about His "complaint filed against Moulton for not doing his job". Plaintiff complained that the "1/10/22 EKG order had not been done in a reasonable time frame for

16

chest pains". Defendant then stated "you said I didn't give you an EKG, well guess what – the EKG is in your file; you cannot say I didn't do my job if I did it".

Mouton's statement was in reference to an EKG he'd done on Plaintiff on 3/2/22, 52 days after P.A. ordered it. Moulton intended to get Plaintiff to drop the complaint under the guise He covered up the neglect of due care. Plaintiff had a right to file against Moulton/Huges for not submitting His request to be seen, while having submitted the $2.00 co-pay fee to be processed without having received service. Defendants violated Plaintiff's right to receive adequate medical service and not to be harassed or receive reprisals for filing complaint against federal employees.

**Denial of medical attention for refusing to drop grievances against federal employees.**

Defendants A. Moulton; RN J. Huges; S. Hendricksen, knowingly violated Plaintiff's rights to receive the same medical attention as non-Muslim inmates for filing a civil action against administrative staff/supervisors.

On 1/10/22, a P.A. (no name tag) from medical came and asked questions about a complaint of chest pains from 12/22/22, stating she would send "someone to draw blood to check your thyroid and EKG." Plaintiff was not seen until 3/2/22.

On 1/19/22 Plaintiff received a copy of His medical permits for His eyeglasses, arch supports, and medical shoes, per Hendricksen demand. Hendricksen refused to allow Plaintiff His medical shoes but authorized a non-Muslim to have his, quoting Huges alleged statement "(He don't need them).

On 2/2/22, Plaintiff was denied His 3rd request for medication (A & D Ointment, Ammonium Lactate 12% and eyedrops) all of which the BOP has provided or its equivalent in the past. These requests were made to medical staff Huges/A. Moulton. Defendants have acted as buffers between inmates/P.A. during Plaintiff's time in SHU. Defendants denial was based on their statement to Plaintiff (without consulting P.A.) that Plaintiff should purchase equivalent items from "over the counter commissary". Hendricken, SHU Supervisor was the only one who could approve such purchases. Hendricksen's statement to Plaintiff was that "medical will give you what you need" (without consulting P.A). Between the (3), Plaintiff was denied the right to have preventative care products to maintain His health. Defendants all viewed Plaintiff's open sores on His skin, irritated, runny, puffy eyes, and refused to properly report it to P.A.'s.

On 2/23/22 Hendricksen received Plaintiff requested to see Davis, his supervisor attempting to get preventive care products from His personal property, which SHU policy authorized. Hendricksen stated "I'm the Captain for today, and the answer is no!"

Plaintiff was denied medical attention after staff became aware He was seeking civil remedy for being denied adequate healthcare. Defendants refused to provide Plaintiff with any medical assistance that would establish He was caused irreparable harm and establish a record of deterioration of health due to poor living conditions of SHU. Plaintiff had a right to receive the same medical care as other non-Muslim inmates and defendants violated that right.

17

## V.   REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

1.   Plaintiff requests $25,000 U.S.C in actual damages from each defendant individually,
2.   Plaintiff requests $60,000 U.S.C in punitive damages from each defendant individually,
3.   Plaintiff requests all other relief this Court deems just.

## VI.   JURY DEMAND (check one box below)

The plaintiff does request a trial by jury.


### DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.


Signed   July 4, 2022
On:                (date)

Signature of Plaintiff


825 N. Christiana Ave, Room 425
Street Address

Mr. Flournoy, Michael
Printed Name


Chicago, IL  60651
City, State, Zip

44862-424
Prisoner Register Number


N/A
Signature of Attorney (if any)

18